UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELENE SHAPIRO,

            Plaintiff,

   -v-

PRUDENTIAL INSURANCE COMPANY OF
AMERICA,

            Defendant.

Case No. 06-CV-4818 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

Plaintiff Helene Shapiro ("Plaintiff") brings this case challenging determinations denying her long-term disability ("LTD") benefits under a group employee benefit plan (the "Plan") offered by Defendant Prudential Insurance Company of America ("Defendant"). There is no dispute that Plaintiff was a covered employee of the Plan. Plaintiff's Complaint seeks relief under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

For the reasons stated in this Memorandum Order, Defendant's Motion for Summary Judgment is GRANTED.

Factual Background

Beginning in July 1994, Plaintiff was employed as a salesperson at Comsys Information Technology Services. (Pl.'s 56.1 ¶ 6; Decl. of Fred N. Knopf ("Knopf Decl."), Ex. I.)[1] Plaintiff claims to suffer from a severe case of cervical myofascitis and disc herniation, apparently arising

---

[1] Plaintiff has failed to follow Local Civil Rule 56.1 in that her submission is non-responsive to Defendant's statement. Because summary judgment is evident on the face of the facts even as presented by Plaintiff, the Court will nevertheless refer to Plaintiff's submission.

from a 1996 car accident.[2] Plaintiff continued to work until November 1999, when she permanently left her job. (Pl.'s 56.1 ¶ 9.) She received short-term disability benefits from November 11, 1999, through February 2, 2000. (*Id.* ¶ 10.)

Standard of Review and Procedural Posture

Judge Colleen McMahon, to whom this case was initially assigned, issued an order on November 20, 2006, summarily deciding that the "denial of benefits will be reviewed de novo." (Dkt. No. 18.) The case was reassigned to this Court on August 6, 2007. The Court assumes without deciding that, as law of the case, de novo review is appropriate here. *See Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 296 (2d Cir. 2004) ("[U]pon *de novo* review, a district court may render a determination on a claim without deferring to an administrator's evaluation of the evidence."); *see also Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 134-35 (2d Cir. 2001) ("[District Court is] free to evaluate [physician's] opinion in the context of any factors it considered relevant, such as the length and nature of the[] relationship [with the claimant], the level of the doctor's expertise, and the compatibility of the opinion with the other evidence.").

As to the ultimate burden, it is both common sense and settled law that "the insured has the burden of proving that a benefit is covered." *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 765 (2d Cir. 2002); *see also Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 439-41 (2d Cir. 2006) (applying *Mario* where Plaintiff claimed to have injured neck, shoulders, back, and wrists in 1999 automobile accident, returned to work, then permanently left his job with short-term disability benefits); *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d

---

[2] *See* Richard Sloane, *The Sloane-Dorland Annotated Medical-Legal Dictionary* 132, 472 (1987) (defining "cervical" as "pertaining to the neck" and "myofascitis" as "inflammation of a muscle and its fascia, particularly of the fascial insertion of muscle to bone").

2

270, 276 (2d Cir. 2000) ("It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss.");.

In her papers opposing summary judgment, Plaintiff claimed that the matter was not ripe for summary judgment because of outstanding discovery. (Pl.'s Mem. of Law in Supp. of Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem. of Law") 10-11.) The Court held a conference addressing this issue on February 20, 2008, then ordered additional briefing of it and, by Order dated March 4, 2008, found Plaintiff's contention to be without merit.[3] Thus, the Court considers Defendant's Motion based on the evidence in the record.

The Court held oral argument on the Motion for Summary Judgment on June 4, 2008.

The 2000 Application for Benefits

At some unidentified point in 2000, an application for LTD benefits was submitted to Defendant. (Pl.'s 56.1 ¶ 11.)[4] Plaintiff highlights that this application included a "signed statement by Dr. [Leonard] Harrison, Plaintiff's physician, stating that Plaintiff was unable to

---

[3] Plaintiff successfully persuaded Judge McMahon that she was entitled to additional discovery "for the limited purpose of ascertaining whether facts exist tending to show that the administrator acted arbitrarily and capriciously by denying her request rather than obtaining additional records that would have provided useful information." (Dkt. No. 18.) Judge McMahon's Order stated expressly: "I will permit such limited discovery, provided it is concluded within thirty days of the date of this decision." (*Id.*) Plaintiff represents having served interrogatories on December 19, 2006, and received responses dated March 8, 2007. Plaintiff complained on April 26, 2007, in opposition to this Motion that "Defendants' Answers are fraught with objections and are limited to the administrative record." (Pl.'s Mem. of Law 11.) Plaintiff did not, however, take any other action, notwithstanding Judge McMahon's express instruction that any discovery disputes were to be taken up with Magistrate Judge George A. Yanthis. (Dkt. No. 18.) At a conference, Plaintiff had no explanation for this failure. In light of this history, the Court's Order of March 4, 2008, deemed any unexercised "right" to "outstanding" discovery to have been waived. (Dkt. No. 55.)

[4] Plaintiff's statement of facts refers to Plaintiff's submission in the passive voice. It is unclear whether this is strained grammar or reflects that someone other than Plaintiff submitted the benefits application on her behalf.

work as of November 4, 1999, and would be able to perform usual work at an unknown future date." (*Id.*)

In a letter dated July 11, 2000, Defendant's representative explained that Defendant had reviewed Plaintiff's claim and determined that Plaintiff was not eligible for benefits. (Knopf Aff., Ex. J.) The letter began by stating the Plan's definition of disability. (*Id.*)[5] Next, the letter reviewed the evidence submitted by Plaintiff – a letter from Dr. Harrison, medical records from Dr. Harrison, an MRI dated January 3, 2000, and physical therapy notes from Plaintiff's husband, Larry Shapiro. (*Id.*) The letter concluded: "We do not find that the available medical evidence submitted by your physician establishes a significant impairment that would warrant total disability. In addition, you worked for nearly three years from the time of the [1996 car accident] and the medical records received do not demonstrate that a significant change has occurred in your condition from the time you were working." (*Id.*) The letter also advised Plaintiff of her right to appeal the determination. (*Id.*)

Plaintiff now contends that "[d]espite ample medical records indicating the contrary, Defendants determined in July 2000 that Plaintiff was not totally disabled." (Pl.'s Mem of Law 18.) Plaintiff thus asks the Court to determine disability under the Plan principally based on Dr. Harrison's conclusion that Plaintiff "cannot work." (*Id*. 13.) First of all, there is no treating physician rule applicable to this case, as there would be in the Social Security context, commanding special deference to a treating physician. *See Mood v. Prudential Ins. Co. of Am.*, 379 F. Supp. 2d 267, 281 (E.D.N.Y. 2005) (citing *Black & Decker Disability Plan v. Nord*, 538

---

[5] Under the Plan, LTD benefits become available when Prudential determines that the beneficiary is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury" and the beneficiary has "a 20% or more loss in [her] *indexed monthly earnings* due to that *sickness or injury*." (Knopf Decl., Ex. M.) Additional definition, which the Court need not reach, applies after twenty-four months of premiums.

4

U.S. 822, 831 (2003)); *see also Connors,* 272 F.3d at 135 n.4 ("We do not adopt for these purposes – that is, when a district court reviews an ERISA administrator's decision under a *de novo* standard – the 'treating physician rule' . . . ."). Second, even with the benefit of Dr. Harrison's interpretive letter dated June 6, 2006 – a benefit the initial claim reviewer did not have – Plaintiff's submission fails to convincingly show that Plaintiff was disabled, as defined by the Plan, as of November 1999. In his notes and his letter, Dr. Harrison says little more than that Plaintiff's pain became worse. His statement that it would prevent her from working in her then-current or any other job is abrupt, conclusory, and entirely without explanation for its suddenness. Any reasonable claim reviewer would want to understand the basis on which a claimant seeks LTD benefits, and Plaintiff's submission was and is insufficient to provide such an understanding.[6]

Plaintiff also strenuously argues that Defendant's review of her application was defective because Defendant refused to consider treatment records submitted by Plaintiff's husband, Larry Shapiro. Plaintiff submits that Defendant's "thinly veiled accusations against Mr. Shapiro's

---

[6] Plaintiff's contention that Defendant should have conducted an independent medical examination is irrelevant because the standard of review focuses on the evidence of Plaintiff's disability and not on Defendant's conduct. In any event, the contention is without merit because no independent medical exam is required. *See Graham v. First Reliance Standard Life Ins. Co.*, No. 04-CV-9797, 2007 WL 2192399, at *10 (S.D.N.Y. July 31, 2007) ("[Plaintiff's insurer] had the right but not the obligation to [conduct an independent medical examination] under the insurance contract, and courts have declined to read such clauses as imposing a requirement upon an insurer to conduct such examinations." (internal citation omitted)); *Couture v. UNUM Provident Corp.*, 315 F. Supp. 2d 418, 432 (S.D.N.Y. 2004) ("[D]efendants are not required by law to conduct [independent medical] examinations."). Simply put, it was Plaintiff's burden to show that she was suffering from a long-term disability. Plaintiff's argument here amounts to a contention that it was Defendant's obligation to incur expense and effort in search of information that was uniquely within Plaintiff's own knowledge and that it was in *her* interest to flesh out by appropriate medical substantiation. Defendant's decision not to award benefits on the basis of the information Plaintiff submitted was entirely reasonable, and Defendant provided Plaintiff with a mechanism to challenge that determination.

character and refusal to consider his findings and review of Plaintiff's condition are preposterous." (Pl.'s Mem. of Law. 13 n.1.) To the contrary, it is curious that Plaintiff would expect Defendant to award LTD benefits relying substantially on Plaintiff's husband's representation about her medical condition. The Court makes no insinuation about Mr. Shapiro's professional competence or candor. Rather, the Court observes merely that Plaintiff's spouse stood and stands to gain financially from a benefits award from Defendant to Plaintiff, and therefore is subject to a structural bias that makes his medical representations of limited value. *Cf.* 81 Am. Jur. 2d *Witnesses* § 230 ("The traditional common-law rule . . . provides that neither party to a marriage can be a witness in favor of or against the other, in a suit to which the other is a party, or has a direct or immediate interest."). Moreover, Plaintiff was always free, and was invited, to augment the medical evidence in support of her LTD claim.

Beyond this, Plaintiff's successful effort to persuade Judge McMahon that de novo review applies here makes any failure by Defendant to consider the physical therapy records irrelevant. The records of Larry Shapiro submitted by Plaintiff include a one-page "Initial Evaluation" dated December 20, 1996, as well as notes apparently reflecting evaluations from March 3, 1999, through March 11, 2000. (Dkt. No. 37 at 23-31.) Unfortunately, the handwritten notes appeared illegible to the Court (at least to a person not familiar with Mr. Shapiro's handwriting), and Plaintiff's briefing fails to give any indication of what in the notes she believes supports her claim. Almost certainly, the initial claim reviewers faced the same limitation, and did not pursue the issue of the notes further because of the structural bias and because the notes were of a physical therapist rather than a physician.[7]

---

[7] When asked at oral argument the substance of Mr. Shapiro's notes that Plaintiff viewed as indicative of disability, Plaintiff's counsel stated that the notes show Plaintiff experienced pain. No matter how strongly construed for Plaintiff, pain itself – evidenced in notes made by

Accordingly, no reasonable finder of fact could agree with Plaintiff that she had shown her entitled to LTD benefits under the Plan based on her 2000 application.

The 2005 Appeal of the Denial of Benefits

Plaintiff did not act on the denial notice from Defendant for approximately *five years*, until she submitted an appeal letter on July 4, 2005. (Pl.'s 56.1 ¶ 13.) This initial appeal letter requested that Defendant "review [her] case and reverse [Defendant's] decision," but did not provide any additional medical evidence for Defendant to assess. (Knopf Decl., Ex. K.)

Neither Plaintiff's letter to Defendant nor anything in Plaintiff's submissions to the Court explains the extraordinary delay between Defendant's letter of July 2000 denying LTD benefits and Plaintiff's letter of July 2005 appealing this denial. *Cf.* 29 C.F.R. § 2560.503-1(h)(1) & (h)(3)(i) (stating that an employee benefit plan must provide claimant with "a reasonable opportunity . . . [for a] full and fair review of . . . the adverse benefit determination" and that such reasonable period must be at least 180 days). At oral argument, the Court asked Plaintiff's counsel if there was any explanation for such delay, to which Plaintiff's counsel replied that he did not "have a good explanation for that."

On September 19, 2005, Defendant's disability consultant replied to Plaintiff stating that Prudential was "unable to make a determination on [Plaintiff's] appeal at this time and [has] suspended [its] review pending receipt of additional information as outlined." (Knopf Decl., Ex. J.) Defendant ultimately did review (or at least had the opportunity to review) additional information, which evidently included supplemental physical therapy records from Larry

---

Plaintiff's husband (and physical therapist), who stands to gain financially from a disability determination – is not enough to make a finding of disability without explanation to the Court of how such pain prevented Plaintiff from working as a salesperson for a technology company. Indeed, Plaintiff's counsel cited to no particular portion of Mr. Shapiro's notes that shed any light on this critical point.

7

Shapiro, notes from a 2001 examination by orthepedist Dr. Michelson, notes from a late 2000 examination by neurosurgeon Dr. Radna, hospital records relating to plaintiff's November 2002 delivery of twins by cesarean section, and miscellaneous doctor's notes by a Dr. Unis for a period from 2003 to 2005. (*Id.*)[8] Defendant's response dated December 8, 2005, cogently reviews all of this material and concludes that the 2001 decision to disallow benefits had been "appropriate." (*Id.*) On May 16, 2006, Plaintiff's counsel wrote to Defendant purporting to make "another appeal" and inviting Defendant to "discuss settlement of this claim prior to commencement of suit." (*Id.*, Ex. L.) Plaintiff did not wait for an answer as on June 22, 2006, Plaintiff filed this case.

Even assuming that the five-year-late appeal is proper, no reasonable finder of fact could determine on the basis of the cumulative material submitted to Defendant that Plaintiff had become permanently disabled at the time she stopped working in November 1999. The evidence submitted simply does not show a disability that indefinitely prevented Plaintiff from working as a technology salesperson. Reviewing the question de novo, the Court reaches the same conclusions as did Defendant in its letter of December 8, 2005. When the unexplained five-year delay in appeal is also considered, Plaintiff's contention that she properly showed her entitlement to LTD benefits running from a period between November 1999 and July 2000 is without merit.

---

[8] The letters from Dr. Michelson and Dr. Radna credibly support that Plaintiff was experiencing significant pain and might require surgery. This is by far the strongest evidence in the record for Plaintiff's case. The letters do not, however, give any indication of how Plaintiff's ability to work on a long-term basis was restricted on account of either pain or anticipated microsurgery, so as to make her (in the words of the plan) "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury." Nor do these letters demonstrate that Plaintiff was disabled *at the time she left work*, or even as late as July 2000 when Defendant issued its initial denial of benefits. Instead, these letters provide only a snapshot at the time of the underlying examinations of Plaintiff, all of which post-date the relevant time period for the onset of Plaintiff's alleged long-term disability.

Plaintiff's Arguments

At oral argument, Plaintiff's counsel repeatedly accused Defendant of having "ignored," "discounted," and "cherry-picked" evidence in reaching its determination that Plaintiff had not shown entitlement to LTD benefits. Even if this were the case, Defendant's actions are entirely irrelevant under the de novo standard of review that Plaintiff sought to have deemed applicable (and that was granted by Judge McMahon). *Cf. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989) (explaining that de novo standard of review is different from "arbitrary and capricious" standard).

Also at oral argument, Plaintiff's counsel stated that, on the basis of the record, he was asking the Court to award benefits to Plaintiff (even while opposing Defendant's Motion for Summary Judgment because he claimed there were factual disputes). *Cf. Locher*, 389 F.3d at 294 (stating that where de novo standard applies, district courts *"must* exercise fully their power to review benefits determinations *de novo* and to *be* substitute administrators" (internal quotation marks omitted)). As counsel conceded, this conclusion was inescapable based on the standard set at Plaintiff's own behest. But Plaintiff's arguments in briefing and in court focus on Defendant's conduct and not on what evidence in the record shows Plaintiff to have been eligible for benefits under the Plan – the only issue that matters to the resolution of this Motion and this case.[9]

---

[9] At oral argument, Plaintiff's counsel suggested an entirely new and unexplained fact that Plaintiff had been awarded LTD benefits under a different plan offered by UNUM Provident, which he said had conducted an independent medical exam. Pressed on this point, Plaintiff's counsel had no explanation as to what this second benefit plan was, how Plaintiff received benefits under it, or why it had not been raised anywhere in the record or in the briefing until oral argument two years into the case and more than a year after Plaintiff's opportunity to respond to a motion for summary judgment filed by Defendant. The Court has no choice but to ignore this unsupported and vague suggestion of other evidence. Plaintiff has had plenty of opportunity to introduce and raise any evidence along these lines, and equity demands that

On seeing this at oral argument, Plaintiff's counsel retreated to say that it would "not be an unwelcome" outcome to his client for the Court to remand the case for further review. Given the history of the litigation, however, this makes no sense. The June 2006 correspondence between Plaintiff's attorney Maureen Williams and Defendant's Senior Appeals Analyst Tara Johnson clearly shows that while Plaintiff was threatening this suit, Defendant remained open to consideration of additional medical evidence and/or further review of what was already in the record. It was Plaintiff who chose to effectively remove the review to federal court.

The record of this claim and this case trigger the conclusion that this is a baseless suit. Plaintiff has not submitted to this Court sufficient evidence – even drawing all inferences in Plaintiff's favor as the non-moving party on this motion – to warrant a determination of disability. Indeed, Plaintiff has not mustered arguments in either briefing or at oral argument as to how the Court could make such a finding under the standard of review that it sought. While Plaintiff now suggests that the case might be remanded for further presentation of evidence to Defendant in support of her claim, permitting such an outcome would turn an ERISA lawsuit such as this into a no-lose proposition for a dissatisfied claimant. It cannot be appropriate that such a person – like Plaintiff here – can bring suit in federal court seeking to have a court declare her eligible for benefits without the possibility that the court would alternatively award repose to a defendant by denying the claim.

Plaintiff chose the time to bring this suit while Defendant remained open to further development or consideration of the record (even after Plaintiff's five-year delay from the initial determination to her first appeal). Plaintiff had opportunity to place into the record any evidence

---

Defendant be given an equally fair opportunity to seek repose with respect to an eight-year-old claim. If this evidence does actually exist and would have been determinative of Plaintiff's claim, Plaintiff may explore other options – but it does not entitle her to prevail on this Motion.

10

she wanted. The applicable standard of review designated by Judge McMahon was that of Plaintiff's choosing. Plaintiff was awarded the additional discovery she requested, even as her counsel failed to timely act on Judge McMahon's order providing for it. At oral argument, Plaintiff was invited to supplement the meager arguments in the briefing.

Against this litigation history, the Court considers that the Supreme Court has explained that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where, as here, "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). As the Supreme Court has emphasized, the issue of fact "must be 'genuine.'" *Matsuishita*, 475 U.S. at 586.

At most, Plaintiff's suggestive, vague, and unsubstantiated claims about the medical record have established metaphysical doubt about her entitlement to LTD benefits, but it is clear that this is not enough to survive summary judgment. Plaintiff has had a full and fair opportunity to place into the record evidence creating a genuine factual issue. Nevertheless, Plaintiff has failed to take that opportunity to submit any such evidence.

Conclusion

For the foregoing reasons, summary judgment for Defendant is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 21) and to close the case.

SO ORDERED.

Dated:   June 12, 2008
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE